EUGENE FRANK, RESPONDENT, v. BOARD OF EDUCATION OF JERSEY CITY, APPELLANT.

Submitted July 10, 1916—Decided March 5, 1917.

A municipal corporation may be liable for work done and materials furnished it, by an unauthorized agent, when the contract for such supplies is one that is within the scope of its corporate powers. An agency in such a case may, by implication, be created in fact, by the conduct or acts of the parties, and the contracts of such an agent may, by like conduct and acts of the parties, be, by implication, ratified by the municipality.

On appeal from the Supreme Court.

For the respondent, *Maximilian T. Rosenberg.*

For the appellant, *John Bentley.*

The opinion of the court was delivered by

BLACK, J.   There is but a single question presented by the record in this case to be answered, viz., whether a municipal corporation is liable to pay for work done and materials furnished it, by an unauthorized agent, when the municipality had the power to make a contract for such purchases. If so, whether an agency to purchase such supplies in fact can be implied, from the acts and conduct of the parties and a ratifi-

cation of the contract for such supplies be also implied, from like acts and conduct. The application of elemental and well-recognized principles in the law of agency, to the facts, as disclosed by the record in this case, leads us to answer these questions in the affirmative.

The case was tried at the Circuit, on an agreed statement of facts, resulting in a judgment against the board of education of Jersey City, for the sum of $684.30, with interest, from June 1st, 1909. The suit was instituted to recover for work done and materials furnished as follows:

| | | | |
|---|---|---|---|
| Nov. | 4, 1908. | To installing light feeder conduit under sidewalk, | $67.50 |
| Dec. | 9, 1908. | To installing power conduit under sidewalk, | 67.50 |
| Oct. | 15, 1909. | To repairing damaged wiring in roadway.... | 40.00 |
| Dec. | 1, 1909. | To repairing motor generator ............. | 46.70 |
| | | To one pole tester...... | 5.00 |
| Dec. | 28, 1909. | To installing power feeder conduit ......:. | 228.80 |
| | | To installing light feeder conduit ..:......... | 228.80 |

$684.30

The facts on which the ruling of the trial court was based are these: The above work and materials were actually furnished by the respondent to the appellant, by order of John T. Rowland, Jr., supervising architect of the appellant, except two items. He had been permitted by the appellant "for a number of years" to order labor and materials of the nature sued for in this case. His orders had been recognized by the appellant and the amounts therefor had been paid by it. "Many previous orders of the same kind were duly paid for by the defendant," furnished by the respondent. The item of $46.70, for repairing motor generator, was for labor, which

was furnished by the respondent, to the appellant, by order of Charles C. Wilson, vice principal of the Jersey City high school, which was under appellant's control. All the items except the item of $5 for one pole tester were "emergency" work, *i. e.,* they were furnished at the time the emergency existed, requiring immediate performance, and before a meeting of the appellant could be held, to pass upon the necessity of doing the same and ordering it to be done.

The respondent had done other work and furnished materials of a similar character for the appellant under and by similar orders. Such work had been regularly paid for, in due course, by the appellant, when the bills for the same were presented, without question as to the regularity of the requests, or the authority of the said Rowland and Wilson. The work done and materials furnished, sued for in this suit, were done and furnished, relying on the fact that previous orders by Rowland and Wilson, under similar circumstances, had been paid for by the appellant. The respondent knew that this practice existed and was permitted to exist by the appellant. This practice had been so "for a number of years." The appellant knew that the work and materials had been furnished it by the respondent, at or about the times they had been so furnished, and it did not, until three years after the last work had been performed, deny the authority of the said Rowland and Wilson to order the work and materials. The appellant has had the use and benefit of the work so done and materials furnished. The amounts charged are the usual amounts for such work and materials and are reasonable charges. The item of $5 for one pole tester represents the loss or damage to a glass instrument, known as a pole tester, injured by the employes of the appellant. Wilson directed the respondent to present his bill therefor to the appellant, stating that it would be paid. Bills in due form of law, under oath, were presented by the respondent to the appellant before this suit was instituted.

It is quite clear the facts of this case substantially distinguish it from the cases decided by this court, viz., *New Jersey Car Spring, &c., Co,* v. *Jersey City,* 64 *N. J. L.* 544, and *Jersey City Supply Co.* v. *Jersey City,* 71 *Id.* 631.

In the first case, the suit was instituted to recover for three bills of goods furnished, viz., January 3d, 1894, $270; June 30th, 1894, $130.19; April 30th, 1895, $280.05. The first bill, by a formal resolution of the street and water commissioners, dated April 2d, 1894, was ordered and directed to be paid. The court held the city was not liable for the last two bills, as the goods were requisitioned by subordinate officers, without authority from the board. The goods were not knowingly accepted or used by the board. That case did not involve the question of an express contract, nor the question of how an agency might be created.

In the second case, the requisition of the goods by the president of the board of fire commissioners was not previously authorized by the board, and approved or acquiesced in by the mayor, as provided by the statute. The agreed statement of facts sets forth in terms that the goods were "used by the city," and this expression furnished the chief support for the contention in the case that the municipal corporation was liable upon an implied undertaking to pay for them, but the court held there can be no implied contract in defiance of express restrictions imposed by law. In that case, the authorized agents were subject by law to restrictions, with respect to the subject-matter and to the form and method of contracting. They were limitations upon the power itself.

This case is differentiated from those cases by the facts in essential points. It is not simply a distinction without a difference. Those cases were rightly decided. They stand upon a firm legal foundation. The rule of law to be applied to this class of cases is stated by our Supreme Court thus: The rule of law is, that it is only when the corporation has the right to enter into the given contract that it can legalize it, after it has been performed under an authority of its unauthorized agents. *Cory* v. *Freeholders of Somerset,* 44 *N. J. L.* 445. That rule was subsequently applied by the Supreme Court, in the case of *Bourgeois* v. *Freeholders of Atlantic,* 82 *Id.* 82, to a recovery for the price of lumber sold and delivered to the county of Atlantic, for the reconstruction and repair of bridges. The contract for such lumber having been made by

an unauthorized agent, but was one which the corporation could lawfully make. It was also held that such a contract may be ratified by implication. This court, in the case of *New Jersey Car Spring, &c., Co.* v. *Jersey City, supra,* held such a contract can be expressly ratified by the municipal authorities. See, too, *Green* v. *City of Cape May,* 41 *N. J. L.* 45.

In the case under discussion, the School law of the state, session of 1903, found in *Pamph. L.* 1904, *p.* 5, § 47; 4 *Comp. Stat., p.* 4740 *et seq.,* provides that the board of education in a city school district such as Jersey City is vested with the power of making contracts in and by its corporate name, and by section 50 every such board shall have the supervision, control and management of the public schools and public school property in its district. It may appoint a superintendent of schools, a business manager and other officers, agents and employes as may be needed. Section 52 provides the board may at any time order repairs to school buildings to an amount not exceeding $500, may authorize the purchase of supplies to an amount not exceeding $250, without advertisement. Section 72 provides for a business manager, who shall supervise, if there be one, the construction and repair of all school buildings, and shall report monthly to the board of education the progress of the work; that repairs not exceeding the sum of $100 may be ordered by the business manager, and repairs not exceeding the sum of $500 may be ordered by the committee of the board having charge of the repair of school property, without the previous order of the board and without advertisement. In this statute, as will be seen, there is express authority for the appointment of an agent—a business manager. The term is immaterial. A supervising architect or vice principal might just as well be called an agent or business manager. There is also the recognition by the legislature of the fact that the board of education probably could not act in many cases without appointing such agents, since the very necessity of some cases requires that such a board should act through agents. But even this would not dispose of the two main items of $228.80 each. There is

no evidence tending to show, and it is not even pretended, that all these various items, amounting in the aggregate to $684.30, can be treated as one contract. so as to bring the amount above the $500 limitation permitted by the statute for repairs of school property without the previous order of the board and without advertisement. It would be quite impracticable to require either a formal resolution for every possible small expenditure, or for the board to act by a majority in person. In the state of facts these orders under consideration are called "emergency" orders. The dictionary definition of emergency is, a sudden or unexpected occurrence or condition calling for immediate action. 3 *Words & Phrases* 2361.

The literature of the law of agency is rich in adjudged cases. The principles pertinent to the subject under discussion are these: An agency, as between individuals or business corporations, may be implied from prior habit, or from a course of dealings of a similar nature between the parties. *Fifth Ward Savings Bank* v. *First National Bank,* 48 *N. J. L.* 513; *Gibson* v. *Snow Hardware Co.,* 94 *Ala.* 346; 2 *Corp. Jur.* 435, 441; 31 *Cyc.* 1217 (II); 1 *Mech. Ag.* (*2d ed.*), § 708. The agency may be implied from the recognition or acquiescence of the alleged principal, as to acts done in his behalf, by the alleged agent, especially if the agent has repeatedly been permitted to perform acts like the one in question. *Murphy* v. *Cane,* 82 *N. J. L.* 557; 2 *Corp. Jur.* 443, § 40. But when it is implied, and in so far as it is implied, the power of the agent must be determined from no one fact alone (*New Jersey Car Spring, &c., Co.* v. *Jersey City, supra*), but from all the facts and circumstances for which the principal is responsible. 2 *Corp. Jur.* 570, 576, § 218. So, ratification may be implied from any acts, words or conduct on the part of the principal, which reasonably tend to show an intention on the part of the principal to ratify the unauthorized acts or transactions of the alleged agent. *Strauss* v. *American Talcum Co.,* 63 *N. J. L.* 613; *Small* v. *Housman,* 208 *N. Y.* 115, 123, provided, the principal in doing the acts relied on as a ratification acted with knowledge of the material facts. *Metzger* v. *Huntington,* 139 *Ind.* 501, 520; 1 *Mech.*

*Ag. (2d ed.)*, § 395. The rule is particularly applicable, where it appears that the principal has repeatedly recognized and affirmed similar acts by the agent. 2 *Corp. Jur.* 489, § 109; 31 *Cyc.* 1219. So, a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the scope of the corporate powers, but not otherwise. *Dill. Mun. Corp. (5th ed.)*, §§ 463, 797; 6 *McQuill. Mun. Corp.*, § 2656; *Green* v. *City of Cape May*, 41 *N. J. L.* 45; 28 *Cyc.* 675.

There can be no legal distinction in the method by which an agency may be created by implication, for an individual and a municipal corporation. In both cases they stand on the same footing. Thus, in *Dill. Mun. Corp. (5th ed.)*, §§ 445, 775, it is stated: "In cases of public agents the public corporation, it is said, is not bound unless it manifestly appears that the agent is acting within the scope of his real and lawful authority, or he is held out by the authorized and proper officers or body of the municipality as having authority to do the act." The same rules apply to municipal corporations acting within the limits of the powers conferred upon them by the legislature as to other corporations or private persons. *Clark* v. *City of Washington*, 12 *Wheat.* 40; *Mayor, &c., of Jersey City* v. *Harrison*, 71 *N. J. L.* 69; *affirmed*, 72 *Id.* 185. The remark of Mr. Justice Collins, in the case of *Wentink* v. *Freeholders of Passaic*, 66 *Id.* 65, 67, is pertinent: "All that he (*i. e.*, the vendor or contractor) need look to is the power to make the ostensible contract." On this point, see *Armitage* v. *Essex Construction Co.*, 87 *Id.* 134; *affirmed*, 88 *Id.* 640; 28 *Cyc.* 667b, 675.

An implied agency is an actual agency. It is a fact to be proved by deductions or inferences from other facts. 2 *Corp. Jur.* 435, § 32; 444, § 42. This is quite different from agency by estoppel, as has been pointed out. Agency by estoppel should be restricted to cases in which the authority is not real but apparent. *Morris* v. *Joyce*, 63 *N. J. Eq.* 549, 555; *Blake* v. *Domestic Mfg. Co.*, 64 *Id.* 480, 494; *Pettinger* v. *Alpena Cedar Co.*, 175 *Mich.* 162, 166; *Columbia Mill Co.* v. *National Bank of Commerce*, 52 *Minn.* 224, 229; 31 *Cyc.*

1219 (B). Agency by estoppel has no proper place in the law of municipal corporations.

We think, as the board of education had the power, under the statute, to contract for the work done and material supplied in this case, there was created by conduct an implied agency, an agency, in fact, on the part of Messrs. Rowland and Wilson; and further, that by implication the contracts of these unauthorized agents have been ratified by the acts and conduct of the school board; hence, it was not error for the trial court to direct a judgment in favor of the respondent and against the appellant.

The judgment will therefore be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 11.

*For reversal*—THE CHIEF JUSTICE, PARKER, WHITE, JJ. 3.