JANE TUFARO, RESPONDENT, v. DEPARTMENT OF HUMAN SERVICES, ANN KLEIN, COMMISSIONER, DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, BERGEN COUNTY WELFARE BOARD, EDWARD TESTA, DIRECTOR, APPELLANTS.

LINDA ANZALONE, RESPONDENT, v. DEPARTMENT OF HUMAN SERVICES, ANN KLEIN, COMMISSIONER, DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, BERGEN COUNTY WELFARE BOARD, EDWARD TESTA, DIRECTOR, APPELLANTS.

Argued April 20, 1982—Decided July 19, 1982.

David P. Schneider, Deputy Attorney General, argued the cause for appellants (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel).

*Michaelene Loughlin* argued the cause for respondents (*Richard S. Semel*, Director, Bergen County Legal Services, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

These appeals present the question whether the food stamp allotments of two welfare mothers attending a county college may be reduced because they receive federal and state aid for transportation, books and supplies, child care, and other education expenses. The outcome depends on whether the education grants are "income" within the meaning of the food stamp regulations, which require that general education grants be

"specifically earmarked by the grantor for education expenses rather than for living expenses." 7 *C.F.R.* § 273.9(c)(5)(iv). If not so specifically earmarked, the recipients' income is increased by the grants and their food stamp allotments may be reduced.

In separate decisions the Appellate Division concluded that the allotments of both Tufaro and Anzalone could not be reduced because they had proved that the grants were actually spent on education-related expenses. Therefore, that court remanded both matters for supplementary proceedings. We granted certification in both *Tufaro* and *Anzalone*, 89 *N.J.* 393 (1981), and we now modify the judgments of the Appellate Division and remand the matters to the Division of Public Welfare in the Department of Human Services (the Division).

I

In 1979–80, plaintiffs, Tufaro and Anzalone, received Aid to Families with Dependent Children (AFDC), 42 *U.S.C.A.* §§ 601–15; § 1396 (1974 & Cum.Supp.1975–81); food stamps, 7 *U.S.C.A.* §§ 2011–29 (Supp.1982); and education grants to support their attendance at Bergen County Community College (County College). The education grants derived from several programs designed to enable qualified students who demonstrate financial need to attend college: the federal Basic Education Opportunity Grant program (BEOG), 20 *U.S.C.A.* § 1070a (1978 & Supp.1982); the federal Supplemental Educational Opportunity Grant program (SEOG), 20 *U.S.C.A.* §§ 1070b to 1070b–3 (1978 & Supp.1982); the federal College Work-Study Program (CWSP), 42 *U.S.C.A.* §§ 2751–56b (Supp.1982); the state Tuition Aid Grant program (TAG), *N.J.S.A.* 18A:71–41 to –49 (Supp.1981–82); and the state Educational Opportunity Fund program (EOF), *N.J.S.A.* 18A:71–31 to –40 (1968). Tufaro received $1,888 in grants and Anzalone received grants of $2,108

and $802.82 in earnings through CWSP.[1] As required at the time, both Tufaro and Anzalone signed affidavits verifying that they would use the funds only for education expenses. *See* 20 *U.S.C.A.* § 1088g (1978) (repealed by *Pub.L.No.* 96–374, Title IV, 94 *Stat.* 1443, 20 *U.S.C.A.* § 1091(a)(5) (Supp.1982), which merely requires a certification that the funds will be used for educational expenses). The federal and state departments of education paid the funds directly to County College, which deducted tuition costs and distributed the balance of the money to the recipients together with memoranda itemizing their education costs.

With respect to Tufaro, County College itemized the following education costs: tuition and fees ($575); books and supplies ($200); and transportation ($700). The County Welfare Board (Board), which administers the food stamp program on behalf of the Division, reviewed her food stamp allocation in light of the grants. The Board accepted County College's determination of the expenses for tuition and books, but it allowed only $300 for transportation, based on 16¢ per mile for an estimated 10 miles. Therefore, it determined Tufaro was entitled to an exclusion totaling $1,075. Subtracting that figure from $1,888 in total education grants, the Board claimed $807 was income to Tufaro. It then allocated $807 over the nine months of the school year to arrive at an $89 monthly increase in income. That increase led

---

[1]Tufaro received $1,888 in grants: $1,038 under the federal Basic Education Opportunity Grant program (BEOG), 20 *U.S.C.A.* § 1070a (1978 & Supp. 1982); $500 under the state Tuition Aid Grant program (TAG), *N.J.S.A.* 18A:71–41 to –49 (Supp.1981–82); and $350 under the state Educational Opportunity Fund program (EOF), *N.J.S.A.* 18A:71–31–40 (1968).

Anzalone received education grants totaling $2,108: $1,038 from BEOG; $500 from TAG; and $570 from the federal Supplemental Educational Opportunity Grant program (SEOG), 20 *U.S.C.A.* § 1070b to 1070b–3 (1978 & Supp.1982).

In addition to the food stamps and educational grants, Tufaro and her child received a $255 monthly AFDC grant and Anzalone and her two children received $336 monthly in AFDC benefits.

the Board to reduce her monthly food stamp allotment from $84 to $64.

Tufaro had a different view of her education expenses. In addition to tuition, books, and supplies, she claimed that her transportation expenses, including gas, insurance, and car repair for nine months, were $885.94. She also claimed that she incurred the following additional expenses: typewriter and xerox ($76), field trips ($80), gym outfit ($96), and babysitting ($104). She computed the total of her education expenses at $2,041.94 and contended that, because that sum exceeded her total education grants of $1,888, she had no real increase in income. Consequently, she asked for a hearing on the reduction in her food stamp allocation.

After a hearing, the Administrative Law Judge (ALJ) reversed the Board's decision to reduce Tufaro's food stamp benefits. The ALJ allowed a standard monthly deduction for child care expenses, 7 C.F.R. § 273.9(d)(4), and calculated transportation expenses at 16¢ per mile based on Tufaro's actual 16-mile commute to County College, and not the estimated 10 miles used by the Board.

Both parties filed exceptions to the ALJ's recommendation. Tufaro alleged that her actual travel expenses were $885 and that a mileage allowance of 16¢ per mile was arbitrary. Furthermore, she claimed that to the extent child care was necessary for her education, the grant money spent for that purpose should be an excludable reimbursement. The Board also filed exceptions, alleging, among other things, that the ALJ improperly deducted Tufaro's expenses for typing, tutoring, and a gym outfit. The Division rejected the ALJ's recommendations and affirmed the reduction in food stamp benefits based on the regulation requiring earmarking.

The Anzalone proceeding was similar. Anzalone received education grants totaling $2,108 and earned $802.82 through CWSP. County College itemized her education expenses as follows: $575 for tuition and fees and $200 for books and

supplies. Anzalone also attended a summer session, for which tuition was $90.

As a result of these grants, the Board reduced Anzalone's monthly food stamp allotment from $109 to $47. In reaching that decision, the Board allowed as expenses: book costs ($200), tuition ($575), summer tuition ($90), and transportation ($381, based on 16¢ per mile for an estimated 10 miles). That left $862 as unearned income, to which the Board added CWSP earnings of $882 as earned income. This increased income led to the food stamp reduction.

Anzalone, however, claimed that her actual education expenses exceeded the grants. Her itemized expenses, which included $1422.30 for travel expenses and $380 for a babysitter, totalled $3054.45.[2]

---

[2]Anzalone listed her education expenses:
Work Study – to pay for car

| | | |
|---|---|---|
| Spring – Fall Tuition | . | $575.00 |
| Summer Tuition | | 115.00 |
| Books for Fall 79 | | 89.00 |
| Books for Spring 80 | | 90.00 |
| Books – Approv. for Summer I | | 40.00 |
| Supplies | | 60.00 |
| Typewriter rental + paper | | 20.00 |
| Tutoring | | 80.00 |
| Xeroxing | | 7.00 |
| Lab goggles | | 3.15 |
| Dissecting kit, surgical gloves | | 11.00 |
| Leotard, tights, swimsuit | | 29.00 |
| Sneakers, socks, running gear | | 35.00 |
| Travel    13 miles round trip    Garf[ield] Paramus  860 for 10 months | | 20.00/week |
| Car expense (reg. 28, 30, oil, fluids, etc.) | | 148.30 |
| Tires | 10 months | 141.00 |
| Insurance | | 273.00 |
| Required field trips (music, art) | | 40.00 |
| Calculator & batteries (2) | | 28.00 |
| Babysitter | | 380.00 |
| Locks (2) | | 7.00 |
| Art class supplies | | 13.00 |
| NLN [sic] | | 10.00 |
| | | $3054.45 [sic] |

After a hearing, the ALJ reversed the Board's decision to reduce food stamp benefits. The ALJ found that all of Anzalone's expenses were necessary for her education. In addition, the ALJ modified the transportation exclusion by allowing 16¢ per mile for the 13 actual miles travelled instead of the estimated 10 miles. With respect to child care, the ALJ disallowed the itemized claim, but allowed the standard deduction.

Anzalone filed an exception to the decision, asserting that she should be entitled to all her travel expenses, not just 16¢ per mile. The Division reversed the ALJ, reinstating the decision of the Board.

Relying on its decision in *Murray v. Human Services Dep't.,* 177 *N.J.Super.* 467, certif. den. 87 *N.J.* 412 (1981), the Appellate Division adopted the contentions of Tufaro and Anzalone and concluded that their actual use of the grants for education purposes, supported by their affidavits, was sufficient to constitute "earmarking." The Division contends, however, that $807 in BEOG and EOF grant monies were distributed to Tufaro directly without being earmarked and, therefore, are includable within her "income." Similarly, the Division contends that $862 in SEOG grants together with $802.82 in CWSP earnings are includable in Anzalone's income. Comprehension of the different positions of the parties requires an explanation of the education grant and food stamp programs.

## II

The positions of the parties on this appeal follow from their conflicting interpretations of the interaction between the education grant and food stamp programs. The food stamp program is the result of the Food Stamp Act of 1964. *Pub.L.No.*88–525, 78 *Stat.* 703, codified as amended at 7 *U.S.C.A.* §§ 2011–26 (1973). Its purpose is to raise levels of nutrition among low income households. 7 *U.S.C.A.* § 2011 (Supp.1982). The federal government pays all of the program benefits and 50% of the administrative costs, 7 *U.S.C.A.* § 2025(a) and (c); state govern-

ment implements and administers the program and pays the remaining administrative costs. 7 *U.S.C.A.* § 2012(n).

In 1977 Congress amended the food stamp legislation to simplify administration of the program and reduce fraud. *See* H.R.Rep.No.95–464, 95th Cong., 1st Sess. 1–2 ("House Report"), *reprinted in* [1977] U.S.Code Cong. & Ad.News 1704, 1978. "Income" was defined broadly to include "all income from whatever source derived" unless the income fell within the exclusions in 7 *U.S.C.A.* § 2014(d) or the deductions in *id.* at (e). *See* House Report at 24, *reprinted in* [1977] U.S.Code Cong. & Ad.News at 2001. Congress viewed this approach as more rational and equitable to both the recipients and the taxpayers. *Id.* at 27, *reprinted in* [1977] U.S.Code Cong. & Ad.News at 2004.

The education grant programs operate somewhat differently. TAG grants are not in issue here because they may be used only for tuition, and the parties agree that TAG funds are excludable from income for food stamp purposes. The parties disagree concerning whether BEOG, SEOG, CWSP, and EOF grants may be excluded from food stamp income. BEOG, SEOG, and CWSP are federal aid programs designed to help eligible students to obtain a post-secondary education. 20 *U.S.C.A.* § 1070 (1978 & Supp.1981) [3] (BEOG and SEOG); 42 *U.S.C.A.* 2751 (Supp.1982) (CWSP). Each of these programs provides funds to be used for expenses related to attendance at school. *See* 20 *U.S.C.A.* § 1091(a)(5) (Supp.1982). Under BEOG, SEOG, and CWSP the "costs of attendance" include not only tuition and fees, books and supplies, but also transportation, miscellaneous expenses, room and board, and an allowance for child care. 20 *U.S.C.A.* § 1089(d)(1)–(3), (6) (Supp.1982). *See* 34 *C.F.R.* § 690.51 (1981) (BEOG); *id.* at § 676.11 (SEOG); *id.* at § 675.11 (CWSP).

EOF is a state program to fund the post-secondary education of needy students. *N.J.S.A.* 18A:71–31, –34. Like the federal aid programs, EOF awards cover the costs of education, includ-

---

[3] All three aid programs were amended since these cases began. We will discuss the programs in their current form.

ing tuition, fees, and living expenses and "whatever constitutes each institutional educational budget." *N.J.A.C.* 9:11–1.15. *See N.J.S.A.* 18A:71–36.

Thus, BEOG, SEOG, CWSP, and EOF grants may be used for living expenses, miscellaneous personal expenses, and child care. In administering the food stamp program, however, the federal Department of Agriculture defines education expenses differently from each of the various definitions in BEOG, SEOG, CWSP, EOF, and TAG. For example, living expenses, miscellaneous personal expenses, and child care are not considered as education expenses under the food stamp program.

When Congress amended the Food Stamp Act in 1977, it was aware of the inconsistencies between the Food Stamp Act and the student aid programs. *See* House Report at 56–57, *reprinted in* [1977] U.S.Code Cong. & Ad.News at 2034–35. Congress excluded tuition and mandatory fees from income, but chose to exclude grants for other education expenses only if they were reimbursements. 7 *U.S.C.A.* § 2014(d)(5). General education grants may be excluded from income only if the funds have been "specifically earmarked by the grantor for education expenses rather than for living expenses . . . ." 7 *C.F.R.* § 273.-9(c)(5)(iv). Living expenses include such items as rent, clothing, and food. *Id.* Rather than permit each recipient to prove actual living expenses, the food stamp program permits an across-the-board standard living expense deduction, 7 *U.S.C.A.* § 2014(e) (currently $85), *see* 7 *C.F.R.* § 273.9(d)(1), and an across-the-board deduction for dependent care, 7 *U.S.C.A.* § 2014(e)(1) (currently $115), *see* 7 *C.F.R.* § 273.9(d)(4). Therefore, plaintiffs' expenses for child care and gym clothes are living expenses and included in income.

Nonetheless, the crucial question remains whether portions of the grant monies are excludable from income for the purpose of computing allotments under the food stamp program because they have been "specifically earmarked by the grantor" for education expenses. 7 *C.F.R.* § 273.9(c)(5)(iv). Unfortunately, the phrases "specifically earmarked" and "the grantor" are not

defined in the food stamp legislation or regulations. In the absence of a legislative or regulatory definition, we look to the purpose of the food stamp program and the realities of the relationship of the parties to determine the identity of the "grantor" and the meaning of "earmarking."

The County Welfare Board concluded that the government, *i.e.*, the Department of Education, was the grantor. *Accord, Spicer v. Commonwealth*, 58 *Pa.Commw.Ct.* 558, 428 *A.2d* 1008, 1011 (1981). In reaching that conclusion, the Board relied on an interpretation of the regulation by the Agriculture Department. Ordinarily, when dealing with an ambiguous regulation courts give conclusive weight to an agency interpretation, if it is reasonably and consistently applied. *See Ehlert v. United States*, 402 *U.S.* 99, 105, 91 *S.Ct.* 1319, 1323, 28 *L.Ed.2d* 625 (1971). In these matters, however, the Board has not consistently applied its own interpretation of the regulation.

The Board contends the grants are includable as income because the Department of Education, the "grantor," did not "earmark" the grants. Nonetheless, in computing appellants' income for food stamp purposes, the Board excluded $200 designated by the County College for books and supplies. That designation implies that the $200 had been "specifically earmarked by the grantor," 7 *C.F.R.* § 273.9(c)(5)(iv), and that the College is the "grantor." Yet the Board refused to exclude the $700 that County College designated as travel expenses for Tufaro. Instead, the Division states on this appeal that it does not challenge the allowance of 16¢ per mile for an estimated 10 miles for both Tufaro and Anzalone. We find that the Board's position concerning appellants' travel expenses contradicts its exclusion of expenses for books and supplies and ignores the reality of the function of the colleges under the education grant programs.

Under BEOG, SEOG, and CWSP, the government delegates most administrative functions to colleges and advances a lump sum to the colleges for distribution. *See* 314 *C.F.R.* § 690.74 (BEOG); *id.* at § 676.6 (SEOG); *id.* at § 675.6 (CWSP). Fur-

thermore, under BEOG, the college and the government may agree that the college will determine the amount of aid and be responsible for disbursement to the students. 34 *C.F.R.* § 690.-72. Both SEOG and CWSP require the college to determine the expected family contribution to education costs and distribute the correct funds to students. *See* 34 *C.F.R.* §§ 676.12, .13 & .16 (SEOG); *id.* at §§ 675.12, .13 & .16 (CWSP). Of particular interest is the fact that all programs authorize the college to set reasonable allowances for books and transportation. 34 *C.F.R.* § 690.51 (BEOG); *id.* at § 676.11 (SEOG); *id.* at § 675.11 (CWSP).

The regulations, together with the surrounding circumstances, including the relationship and conduct of the college and federal and state departments of education, implicitly authorize the college to earmark grants for specific education expenses. *See Carlson v. Hannah*, 6 *N.J.* 202, 212 (1951); *Sibley v. City Service Transit Co.*, 2 *N.J.* 458, 462–63 (1949); *Frank v. Board of Educ. of Jersey City*, 90 *N.J.L.* 273, 278–80 (E. & A.1917); *Restatement (Second) of Agency* § 7 (1958). Thus, those departments use the college as their agent for the purpose of the food stamp program.

Similarly, we conclude that under EOF the college acts as the agent for the state Department of Education in disbursing EOF funds and should be considered the grantor under 7 *C.F.R.* § 273.9(c)(5)(iv). Like the federal aid programs, EOF grants funds to needy students for post-secondary education, *N.J.S.A.* 18A:71–31, –34, to cover the cost of education, including tuition, fees, and living expenses. *See N.J.S.A.* 18A:71–36. As under the federal aid programs, the college is given much of the responsibility for administering EOF. The government provides the college with the funds, *N.J.A.C.* 9:11–1.18, and the college must decide whether to accept applicants into EOF. *N.J.A.C.* 9:11–1.19(a). Furthermore, the college must verify the student's financial information, *N.J.A.C.* 9:11–1.7, and notify the student "of the content of his or her financial aid package." *N.J.A.C.* 9:11–1.12.

The administration of the food stamp program is consistent with the distribution of funds under the federal education grant programs, but inconsistent with the interpretation of the County Welfare Board and the Department. By practical administration of the education grant and food stamp programs, the government agencies have authorized the college to act as their agent for earmarking education expenses.

■ We find that the interpretation of the regulation applied to expenses for books and supplies is consistent with the policy and purpose behind the earmarking requirement of the food stamp and federal and state student aid programs. Accordingly, we conclude that the college may also earmark transportation expenses so that they may be excluded from food stamp income.

■ The Appellate Division cut through the Gordian knot of regulations and concluded the use of the funds for education expenses constituted earmarking. *See Murray v. Human Services Dep't., supra.* In reaching that conclusion, the Appellate Division relied in part on affidavits signed by appellants verifying that the grants would be used for education only. The fact remains, however, that funds considered as education expenses under BEOG, SEOG, EOF, and CWSP are considered living expenses under the food stamp program and, therefore, included within that program's definition of income. That is, some money distributed under the education programs is not earmarked specifically by the Department of Education for education expenses as defined by the food stamp regulations. Consequently, we decline to hold that the mere certification that funds will be spent on itemized education expenses is sufficient, even when the funds are so used, to constitute earmarking under the food stamp regulations. Those regulations require at least that the college designate specific amounts for education expenses. Accordingly, we modify the decisions of the Appellate Division to the extent they relied on *Murray v. Human Services Dep't., supra,* which we disapprove.

The food stamp and education grant programs express society's concern that the poor should not go hungry or uneducated.

Unfortunately, the regulatory schemes for administering the two programs are sufficiently complex to baffle a sophisticated lawyer, not just two welfare mothers striving to obtain college training. For example, appellants have received different definitions of the cost of their education from various county, state, and federal officials. Recognizing the diverse definitions of some operative words and the lack of the definition of others, it is not surprising that the parties became lost in the maze of regulations.

We conclude that the appropriate remedy is to remand the *Tufaro* matter to the Division to determine her food stamp allotment in light of her right to an exclusion of $200 for books and supplies and $700 for transportation expenses. Similarly, we remand the *Anzalone* matter to the Division to receive evidence on the issue of earmarking by the County College and to determine whether she is entitled to an exclusion for transportation expenses. If so, the Division should then determine her food stamp allotment in light of that exclusion and the $200 exclusion for the expense of books and supplies.

*For modification and remandment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*Opposed*—None.