Judith SHAFFER,
Plaintiff-Appellee/Cross-Appellant,

v.

John R. BLOCK, Secretary of Agriculture of the United States, Defendant-Appellant/Cross-Appellee,

and

George Steger, et al.,
Defendants-Appellants/Cross-Appellees.

Nos. 81–3475, 81–3476 and 81–3654.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1982.

Decided April 20, 1983.

grant[1] (BEOG or BEO grant) should be counted as income in determining food stamp eligibility and benefits. The district court held that the plaintiff's BEO grant was excludable from income as a reimbursement pursuant to 7 U.S.C. § 2014(d)(5) and 7 C.F.R. § 273.9(c)(5). We reverse.

Richard W. Hanusz, Lucas County Welfare Dept., Toledo, Ohio, for Lucas County Welfare and George Steger.

Michael H. Igoe, Steven H. Feldman, Asst. Attys. Gen., Columbus, Ohio, for Ohio Dept. of Public Welfare, Kenneth B. Creasy and Thomas McDowell.

Joseph R. Tafelski, Wm. H. Fraser and Ruth J. Weil, Advocates for Basic Equality, Laurene M. Heybach (argued), University of Toledo College of Law, Civil Law Center, Toledo, Ohio, for Judith Shaffer.

James Michael Kelley, Associate Gen. Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Ed. J. Barron, Terence G. Jackson (argued), Office of Gen. Counsel, U.S. Dept. of Agriculture for John R. Block, in cases Nos. 81–3475 and 81–3654.

Brian G. Kennedy, Leonard Schaitman, Al J. Daniels, Jr., U.S. Dept. of Justice, Civ. Div., Washington, D.C., for John R. Block in case No. 81–3476.

Before EDWARDS, Chief Circuit Judge, KEITH, Circuit Judge, and HOFFMAN *, Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge.

This case arises under the Food Stamp Act of 1977, Pub.L. No. 95–113, Title XIII, 91 Stat. 958 (1977) (codified at 7 U.S.C. §§ 2011–2029), and involves the question of whether a Basic Educational Opportunity

## FACTS

During the 1979–80 academic year, the plaintiff, Judith Shaffer, was a full-time student at Michael J. Owens Technical College in Ohio. At that time, the plaintiff and her minor daughter were receiving benefits from the Food Stamp Program of $96.00 per month and $216.00 per month from the Aid to Dependent Children program. Ms. Shaffer also received two educational grants to help defray the costs of her education; an Ohio Instructional Grant of $330.00 per semester, and a BEO grant of $544.00 per semester.

On November 21, 1979, Ms. Shaffer received a notice from the Lucas County Welfare Department (LCWD), an organization responsible for administering the food stamp program, that beginning January 1, 1980, her food stamp benefits would be reduced from $96.00 per month to $43.00 per month. The reduction resulted from the welfare department including the BEOG money as income to Ms. Shaffer for food stamp eligibility and benefit purposes.[2]

After receiving the notice, Ms. Shaffer requested a hearing with the Ohio Department of Public Welfare to challenge the LCWD actions. At the hearing on February 1, 1980, Ms. Shaffer argued that the BEOG money should be excluded from her income pursuant to 7 U.S.C. § 2014(d)(5) as being "specifically earmarked" for education expenses. Ms. Shaffer also argued

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. The Education Amendments of 1980, Pub.L. No. 96–374, 94 Stat. 1367 (1980) changed the designation of Basic Educational Opportunity Grant to Pell Grant. Throughout this opinion they will be referred to as Basic Educational Opportunity Grants.

2. The Ohio Instructional Grant was excluded from Ms. Shaffer's income for food stamp purposes since it was paid directly to the institution and used exclusively for tuition. See 7 U.S.C. § 2014(d)(3); 7 C.F.R. § 273.9(c)(3) (1982). Consequently, only the status of the BEOG money was involved in this case.

that the same result was required by the Ohio Food Stamp Certification Manual §§ 4224.4–4226. The hearing officer ruled that the BEO grant was includable as income because the money was *not* specifically earmarked for education expenses and ordered that Ms. Shaffer's food stamp benefits be reduced from $96.00 per month to $61.00 per month effective March 1, 1980.

On February 29, 1980, Ms. Shaffer filed suit in the United States District Court for the Northern District of Ohio challenging the reduction of her food stamp benefits. The complaint named as defendants the Lucas County Welfare Department; George J. Steger, the director of the Lucas County Welfare Department; the Ohio Department of Public Welfare; Kenneth B. Creasy, the director of the Ohio Department of Public Welfare; and Thomas McDowell, the Chief of the Ohio Department of Public Welfare, Bureau of Food Stamps. Ms. Shaffer brought suit on her behalf and on behalf of "all other individuals who, due to receipt of certain educational grants, have been deprived of the full amount of their benefits under the Food Stamp Program." The complaint asked for class certification and prayed for declaratory and injunctive relief.

On March 27, 1980, the district court "conditionally" certified a class consisting of "all persons in the State of Ohio who have or will have food stamp benefits reduced, terminated or denied because of the inclusion (as income) of educational grants or portions thereof which are reimbursements for specific education expenses such as books, travel and school supplies." The court concluded that the requirements of Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure had been satisfied, but postponed final consideration of the class action issue until a later time.

On April 8, 1980, a proposed stipulation and settlement agreement was filed with the court. The settlement agreement would have excluded from income for food stamp purposes, educational assistance monies used for books, transportation, supplies and other school related expenses provided certain procedures were met.

Subsequent to the filing of the proposed settlement agreement the Secretary of Agriculture moved to intervene as a party defendant pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure. The Secretary was seeking to intervene to challenge the proposed settlement agreement as being inconsistent with the federal food stamp statute and regulations. On July 24, 1980, the district court granted the Secretary's motion to intervene.[3]

On August 19, 1980, the Secretary filed a motion for summary judgment. The plaintiff countered by filing a cross-motion for summary judgment on September 11, 1980. On June 5, 1981, the district court issued its opinion and order on the motions. The district court found that plaintiff's BEO grant had been improperly included as income for food stamp purposes and ordered that the defendants allow an exclusion of the BEOG monies. The court also invalidated the proposed settlement agreement as being inconsistent with the federal food stamp regulations. Finally, the court revoked the conditional class certification it had issued on March 27, 1980.

The Secretary of Agriculture and all the state and county defendants appeal the decision of the district court excluding the BEOG money from Ms. Shaffer's income for food stamp purposes. Plaintiff cross-appeals the decision of the district court revoking the conditional class certification.

## DISCUSSION

The question of whether a BEO grant should be included as income in determining food stamp eligibility and benefits will be considered first. For the reasons discussed below, we find it necessary to reverse the district court on this difficult issue and hold that Ms. Shaffer's BEOG money is includable as income in determining food stamp eligibility and benefits.

---

**3.** Bob Bergland was the Secretary of Agriculture that intervened in this action. The current Secretary of Agriculture, John R. Block, has since been substituted as a party to this action.

## I. The Food Stamp Program

The Food and Nutrition Service of the Department of Agriculture conducts the food stamp program under the Food Stamp Act of 1977, and the Secretary of Agriculture issues regulations necessary for its administration. 7 U.S.C. § 2013(a), (c). The program provides nutritional assistance to eligible households by issuing at no charge to the household "coupons" or "food stamps" that can be redeemed for food items at retail stores participating in the program. 7 U.S.C. §§ 2013(a), 2017, 2018. Although the food stamp program is administered at the national level by the Department of Agriculture, it is administered by state agencies at the local level. 7 U.S.C. §§ 2012(n), 2013(a), 2020. The state agencies are responsible for determining, in accordance with uniform national standards, which applicant households are eligible for the issuance of food stamps and the amount of an eligible household's allotment. 7 U.S.C. §§ 2014(b), 2017, 2020(a).

Eligibility for the food stamp program and the amount of benefits a household receives are based on the "income" of the household. 7 U.S.C. §§ 2014, 2017. *See also* 7 C.F.R. § 273.10 (1982). When household income reaches a certain level, the household will not be eligible for food stamps, and as the income of an eligible household increases the food stamp allotment will decrease.

## II. "Income" Under the Food Stamp Program

### A. Income Generally

The Food Stamp Act contains a definition of "income" that specifies what is to be included and excluded in the income figure used in determining food stamp eligibility and benefits. The Act first defines income broadly as including "all income from whatever source." 7 U.S.C. § 2014(d). *See also* 7 C.F.R. § 273.9(b) (1982). The Act then lists the few specific exclusions and deduc-

tions that are allowed. 7 U.S.C. § 2014(d), (e). *See also* 7 C.F.R. § 273.9(b)–(d) (1982).[4]

BEOG monies are clearly within the first part of the Act's definition of income. The question is whether educational grant money is to be excluded from income under one of the exclusions. *See generally* H.R.Rep. No. 464, 95th Cong., 1st Sess. 27, 29, *reprinted in,* 1977 U.S.Code Cong. & Ad.News 1971, pp. 1704, 2004, 2006 [herein cited as H.R.Rep. No. 464]. *See also* 43 Fed.Reg. 18888 (1978). The two exclusions relevant to this issue are the exclusion for educational grants and scholarships, 7 U.S.C. § 2014(d)(3), and the exclusion for reimbursements, *id.* § 2014(d)(5).

The income section of the Food Stamp Act reads in pertinent part as follows:

> (d) Household income for purposes of the food stamp program shall include all income from whatever source excluding ... (3) all education loans on which payment is deferred, grants, scholarships, fellowships, veterans' education benefits, and the like to the extent that they are used for tuition and mandatory school fees at an institution of higher education or school for the handicapped, ... (5) reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household ....

7 U.S.C. § 2014(d).

### B. Education Grants and Scholarships Exclusion

The exclusion for education grants and scholarships in subsection (d)(3) of § 2014 is implemented by the Department of Agriculture regulation which provides:

> (3) Educational loans on which payment is deferred, grants, scholarships, fellowships, veterans' educational benefits, and the like to the extent that they are used for tuition and mandatory school fees at an institution of higher education,

---

4. By adopting this definition Congress intended to "cast the broadest possible net" and include all forms of income. H.R.Rep. No. 464, 95th Cong., 1st Sess. 25, *reprinted in,* 1977 U.S.Code Cong. & Ad.News 1971, 2001. According to the Department of Agriculture explanation of its food stamp regulations all monies are to be included as income for food stamp purposes, whether specifically cited or not, unless specifically excluded. 43 Fed.Reg. 18887 (1978).

including correspondence schools at that level, or a school at any level for the physically or mentally handicapped. Mandatory fees are those charged to all students or those charged to all students within a certain curriculum. For example, uniforms, lab fees, or equipment charged to all students to enroll in a chemistry course would be excluded. However, transportation, supplies, and textbook expenses are not uniformly charged to all students and, therefore, would not be excluded as mandatory fees.

7 C.F.R. § 273.9(c)(3) (1982). Under this exclusion grant monies actually used to cover tuition and mandatory school fees[5] are excluded from income. *See* H.R.Rep. No. 464, *supra,* at 34. *See also* 43 Fed.Reg. 18888 (1978). However, grant monies that are used for school expenses other than tuition and mandatory fees, such as for books, transportation, and living expenses are not excludable from income under this exclusion. H.R.Rep. No. 464, *supra,* at 35. 43 Fed.Reg. 18888 (1978).[6] Thus, BEOG money that is actually used for tuition or mandatory fees can be excluded from income under the (d)(3) exclusion.

**5.** Mandatory fees are the non-tuition fees charged by the institution and would include an expense required by a school in order to attend the school or enroll in a particular program or course. H.R.Rep. No. 464, *supra,* at 35. Expenses for books, transportation and personal maintenance are not mandatory expenses and thus monies spent on them are not entitled to this exclusion. *Id. See also* 43 Fed.Reg. 18888 (1978). The requirement that a mandatory fee be one that is uniformly required by the school is designed to reduce program abuse and avoid the administrative inconvenience that would arise if individual determinations were required. 43 Fed.Reg. 18888 (1978).

**6.** This conclusion does *not* represent a change in how grants and scholarships are treated for income purposes from the prior food stamp statute. H.R.Rep. No. 464, *supra,* at 35. *See also Beirne v. Secretary of the Dep't of Agriculture,* 645 F.2d 862 (10th Cir.1981).

The purpose of this exclusion is to count as income that part of a grant or scholarship that can be used for the student's ordinary living expenses and *not* count as income the portion that is clearly unavailable for living expenses because it is actually used for tuition and man-

■ In the present case, Ms. Shaffer's tuition and fees were covered by her Ohio Institutional Grant and the BEO grant was not used to cover tuition or mandatory fees. Therefore, Ms. Shaffer's BEO grant *cannot* be excluded from income under the educational grant and scholarship exclusion, 7 U.S.C. § 2014(d)(3).

The parties are in agreement that Ms. Shaffer's BEO grant is *not* excludable from income under subsection (d)(3) for the reasons discussed above. The Secretary of Agriculture asserts also that grant monies are excludable from income *only* to the extent they are used for tuition and mandatory fees and *cannot* be excluded from income under any other exclusion. The Secretary argues that routine educational grants are specifically addressed in subsection (d)(3), which allows an exclusion only for funds used for tuition and mandatory fees, and if Congress had intended grant funds used for non-mandatory expenses to be excluded from income it would have specifically provided so in subsection (d)(3). Thus, the Secretary argues, the other exclusions in the Food Stamp Act definition of income cannot be used to exclude grant funds.[7]

datory fees. H.R.Rep. No. 464, *supra,* at 34–35. 43 Fed.Reg. 18888 (1978).

**7.** The Secretary of Agriculture argues that the Department's view that grants are excludable from income only to the extent used to cover tuition and mandatory fees, is entitled to deference and should be followed by the court. In general, the views of the agency, responsible for administering a statute are entitled to considerable respect and deference, *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981), but we are not bound to accept the agency's views when we find that they are inconsistent with the intent of Congress or the agencies own regulations, or are plainly erroneous. *Hall v. Secretary, Health, Education and Welfare,* 600 F.2d 556, 561 (6th Cir.1979); *Detroit Edison Co. v. United States Environmental Protection Agency,* 496 F.2d 244 (6th Cir.1974). The deference due an agency's views is secondary to our obligation to discover the true meaning of the statute, as revealed by its language, .purpose, and history. *See Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).

The Secretary first cites the plain language of the statute in support of his position. Actually, the Secretary relies on an antithetical reading of the subsection (d)(3) exclusion to limit the grant funds that are excludable; since only grant funds actually used for tuition and mandatory fees are excludable from income under subsection (d)(3), the subsection requires that all other grant monies be included in income. The Secretary essentially argues that subsection (d)(3) was meant to limit the excludability of grants and scholarships from income, thus the other exclusions cannot be relied upon. Where the language of a statute is clear, we must construe the statute so as to give effect to the literal language of the statute. *Hall v. Secretary, Health, Education and Welfare,* 600 F.2d 556, 561 (6th Cir.1979); *Hillard v. United States,* 310 F.2d 631, 632 (6th Cir.1962). Although, in this case the Secretary's construction has some merit and is not entirely unreasonable, we do not find the statutory language to be so clear as to compel us to adopt the interpretation offered by the Secretary.

The Secretary also cites the Department of Agriculture regulations to support the argument that subsection (d)(3) limits the excludability of grant funds to only the amounts used for tuition and mandatory fees. We find the opposite to be true. A plain reading of the regulations indicates that grant funds which cannot be excluded under subsection (d)(3) *may* be excluded under another exclusion. *E.g.,* 7 C.F.R. § 273.9(c)(1), (c)(5)(iv) (1982). Additionally,

the explanation of the educational grants and scholarships exclusion which accompanied the proposed Department of Agriculture Regulations states, "[R]eimbursements for certain educational expenses which are not mandatory fees are excludable under § 273.9(c)(5) of the proposed regulations." 43 Fed.Reg. 18888 (1978). This clearly indicates that subsection (d)(3) is not to be given the limiting reading urged by the Secretary and more specifically if grant monies are not excludable under the educational grants and scholarships exclusion, the reimbursements exclusion can be looked to.

Last, the Secretary relies on the legislative history to support the argument that subsection (d)(3) limits the excludability of grant funds. The Secretary cites several statements from the legislative history to support his position, such as, "Any scholarship or portion thereof used for non-mandatory education related expenses, such as books or transportation, would not be entitled to be excluded from income..." H.R. Rep. No. 464, *supra,* at 35. *See also, e.g., id.* at 28, 73–74; S.Rep. No. 180, 95th Cong., 1st Sess. 144, U.S.Code Cong. & Admin. News 1977, p. 2012. These statements cited by the Secretary appear in the sections of the legislative history that explain the operation of the (d)(3) exclusion and do not in any way limit the use of the other exclusions where an educational grant or scholarship is involved.[8] If such statements were made in conjunction with an explanation of any of the other exclusions, they would then support the Secretary's limiting construction of the subsection (d)(3) exclusion, but they do not appear in this context. The

---

**8.** One statement from the legislative history cited by the Secretary which explains how a student's adjusted monthly income is to be computed, presents the strongest support for the Secretary's construction. It states:

> To determine the adjusted monthly income for student households, the eligibility worker should determine the total cash value of all scholarships, educational grants, deferred payments, loans, or other monies received in a onetime payment for expenses of education. *Then the worker should subtract from this total all tuition and mandatory fees assessed by educational institutions, paid or expected to be paid for the period such monies are to cover. However, the cost of*

> *books, meals at school, transportation or supplies should not be deducted.* The eligibility worker should then average the remainder over the period the money is to cover to obtain the monthly income figure derived from these sources.

H.R.Rep. No. 464, *supra,* at 73–74 (emphasis added), U.S.Code Cong. & Admin.News 1977, pp. 2051–2052. This single passage possibly supporting the Secretary's position, in our opinion, is greatly outweighed by all the evidence to the contrary. Additionally, this statement can be read in a manner consistent with our conclusion as merely defining what are non-mandatory fees.

Secretary's construction that grants monies are excludable from income *only* to the extent they are used for tuition and mandatory fees is not persuasive and *cannot* be supported by the language of the Food Stamp Act, the Department of Agriculture Regulations, or the legislative history of the Act, and we decline to adopt it.

### C. Reimbursements Exclusion

The second exclusion which must be examined is the reimbursements exclusion of subsection (d)(5) of § 2014. This subsection provides an exclusion for "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household."[9]  7 U.S.C. § 2014(d)(5). This exclusion is implemented by the Department of Agriculture regulation which provides:

(5) Reimbursements for past or future expenses, to the extent they do not exceed actual expenses, and do not represent a gain or benefit to the household. Reimbursements for normal household living expenses such as rent or mortgage,

personal clothing, or food eaten at home are a gain or benefit and, therefore, are not excluded. To be excluded, these payments must be provided specifically for an identified expense, other than normal living expenses, and used for the purpose intended. When a reimbursement, including a flat allowance, covers multiple expenses, each expense does not have to be separately identified as long as none of the reimbursement covers normal living expenses. The amount by which a reimbursement exceeds the actual incurred expense shall be counted as income. However, reimbursements shall not be considered to exceed actual expenses, unless the provider or the household indicates the amount is excessive. 7 C.F.R. § 273.9(c)(5) (1982). Under this provision an exclusion from income is allowed for "reimbursements" a food stamp recipient receives for "expenses actually incurred," provided there is no "gain or benefit to the household." *See* 43 Fed.Reg. 18888–89 (1978). It does not matter whether the reimbursement is a repayment for

---

**9.** The Secretary of Agriculture argues that the reimbursements exclusion of subsection (d)(5) is a narrow one and as such general education grants *cannot* be excluded from income under it. The Secretary asserts that "reimbursements" should be defined as it would be in the "normal business sense" to mean specific repayments of job-related vouchered expenses incurred for another's benefit. Such a construction would restrict the use of the reimbursement exclusion to employees and volunteer workers. The Secretary relies on a passage from the legislative history to support this narrow reading of the reimbursements exclusion. The report states:

This subsection would also exclude from income reimbursements for out-of-pocket expenses, such as to volunteers serving as foster grandparents, senior health aides, senior companions, or in similar capacities, or to persons in training programs, so long as the reimbursements were no greater than the expenses actually incurred. This exclusion is a matter of simple fairness to those, particularly the elderly, who donate their time and effort to the public good as well as to those who are simply given reimbursement for expenses incurred in the course of their jobs, either in the form of payment covering specific vouchers or else as an allowance for projected expenses. It should be interpreted flexibly to cover flat weekly or monthly pay-

ment to cover expenses unless the payor indicates such payment exceeds actual expenses. H.R.Rep. No. 464, *supra,* at 36, U.S.Code Cong. & Admin.News 1977, p. 2012. Although the statement indicates that the reimbursements exclusion should be available to volunteers and persons participating in training programs, it does not dictate that the availability of the exclusion is limited to these persons. Thus, we conclude that the reimbursements exclusion of subsection (d)(5) is not as restricted as the Secretary urges and grants received by a student may qualify for an exclusion under it, provided all the requirements established by the Act and Department of Agriculture Regulations are met.

This conclusion is even more evident when one considers the fact that the original Senate bill limited the exclusion to reimbursements to *volunteers and persons engaged in training programs,* but in the Conference Committee the broader House version was adopted, and eventually enacted, which made the reimbursements exclusion available to *all persons. See* H.R.Rep. No. 599, 95th Cong., 1st Sess. 191–192, *reprinted in,* 1977 U.S.Code Cong. & Ad. News 2445, 2491–92; S.Rep. No. 418, 95th Cong., 1st Sess. 191–192 (1977). Additionally, the construction offered by the Secretary is contra to the Department of Agriculture regulations. *See* 7 C.F.R. § 273.9(c)(5)(iv) (1982). *See also* 43 Fed.Reg. 18888 (1978).

expenses already incurred or an allowance received in advance of an expected expense, as long as the exclusion is for expenses actually incurred.[10] *Id. See also* H.R.Rep. No. 464, *supra,* at 36. The reimbursement must, however, be provided specifically for an identified expense. 7 C.F.R. § 273.-9(c)(5) (1982). An exclusion is *not* allowed for reimbursements for expenses that are normal living expenses such as rent, clothing, and food eaten at home, since these will always represent a direct benefit to the household.[11] 43 Fed.Reg. 18889 (1978).

The Department of Agriculture Regulations go on to list several examples of reimbursements that qualify for the exclusion from income under subsection (d)(5) of § 2014. One of these examples is critical to this case. The regulation provides:

> Examples of excludable reimbursements which are not considered to be a gain or benefit to the household are:
>
> . . . .
>
> (iv) Reimbursements or allowances to students for specific education ex-

penses, such as travel or books, but not allowances for normal living expenses, such as food, rent, or clothing. Portions of a general grant or scholarship must be specifically earmarked by the grantor for education expenses rather than for living expenses to be excludable as a reimbursement.

7 C.F.R. § 273.9(c)(5) (1982). This example clearly indicates that certain payments a student receives to cover education expenses can be excluded from income as a qualified reimbursement. *See also* 43 Fed. Reg. 18888 (1978). To be excludable the general education grant or scholarship "must be specifically earmarked by the grantor for education expenses rather than for living expenses." 7 C.F.R. § 273.-9(c)(5)(iv) (1982).[12]

### III. "Specifically Earmarked By the Grantor For Education Expenses"

The crucial question then is whether portions of Ms. Shaffer's BEO grant are ex-

---

**10.** Reimbursements are not to be considered excessive unless the household or the provider of the reimbursement indicates that the amount of the reimbursement may be in excess of actual costs. 43 Fed.Reg. 18889 (1978). *See also* H.R.Rep. No. 464, *supra,* at 36. State agencies are not required to verify individual expenses, except where the claimed reimbursement is inconsistent with other known information, in order to avoid administrative delays that would result from such verification. 43 Fed.Reg. 18889 (1978). Where the reimbursement is in excess of the actual expense the amount of the actual expense is excludable from income and the excess is income. *Id.*

**11.** Since any money or gift a person receives represents some gain or benefit to the household, the problem arises at what point is the gain or benefit so remote or intangible as to be ignored. The Department of Agriculture has adopted the position that payments received for normal living expenses will always represent a direct benefit to the household since the household would have saved the money which would have been used to cover the living expenses, and such payment should not be excluded from income. 43 Fed.Reg. 18889 (1978). However, reimbursements for other than normal living expenses, even where the person retains a tangible item such as a book, will not be considered a gain and can be excluded from income—the gain or benefit is too remote. *Id.*

Additionally, rather than allow an exclusion from income for ordinary living expenses, the food stamp program provides for standard deductions. *See* 7 U.S.C. § 2014(e). *See also* 7 C.F.R. § 273.9(d) (1982).

**12.** By applying both the subsection (d)(3) and subsection (d)(5) exclusions to a student's income, a two-tiered system of exclusions is created for educational grant money. At the first level, grant funds that are actually spent on tuition and mandatory fees are excluded from income. 7 U.S.C. § 2014(d)(3); 7 C.F.R. § 273.9(c)(3) (1982). At the second level, grant monies a student receives that are specifically earmarked by the grantor to cover certain education expenses are excluded from income. 7 U.S.C. § 2014(d)(5); 7 C.F.R. § 273.9(c)(5), (c)(5)(iv) (1982). However, grant funds that are reimbursements or allowances for normal living expenses are not excludable from income in any situation.

When determining whether a student's grant can be excluded from income, it is analytically helpful to divide the grant monies into three categories: (1) the amount required to cover the student's tuition and mandatory fees, (2) the part, if any, that is a reimbursement or allowance specifically earmarked for non-mandatory education expenses but other than normal living expenses, and (3) the part that is not earmarked and is available for normal living expenses.

cludable from income for food stamp purposes because it was "specifically earmarked by the grantor for education expenses." 7 C.F.R. § 273.9(c)(5)(iv) (1982). The district court concluded that the BEO grant was excludable from income under the reimbursement exclusion. The district court determined that Owens Technical College was the grantor of the BEO grant and that as grantor the college had specifically earmarked the funds for educational purposes, thus qualifying for the exclusion. In reaching our conclusion two matters must be addressed: first, who can be a grantor of a grant or scholarship; and second, what constitutes adequate specifically earmarking. Before analyzing these matters a basic understanding of the BEOG program is essential.

## A. The BEOG Program

The BEOG program was created in 1972 by the Education Amendments of 1972, Pub.L. No. 92–318 § 411, 86 Stat. 235 (1972),[13] and is administered by the Department of Education (DOE). The purpose of the program is to make the benefits of post-secondary education available to financially needy students. 20 U.S.C. § 1070(a); 34 C.F.R. § 690.1 (1981). The program

helps qualifying students meet the costs of their post-secondary education by providing to them financial aid in the form of basic grants.[14] 20 U.S.C. § 1070a(a)(1)(B), (a)(2)(A)(i).

A student[15] who wants a BEO grant must go through a two-step application process. First, the student must apply to the Secretary of DOE to have his or her expected family contribution determined. 20 U.S.C. § 1070a(b)(2); 34 C.F.R. § 690.11 (1981). The expected family contribution is the amount the student and the student's family may reasonably be expected to contribute toward the applicant's post-secondary education that academic year. 20 U.S.C. § 1089(a), (b). See 34 C.F.R. § 690.-31–.48 (1981). The Secretary will compute the expected family contribution and send the student a Student Eligibility Report (SER) which states the amount of the applicant's expected family contribution. 34 C.F.R. § 690.14 (1981). Second, the student must apply for the grant by submitting a valid SER to the student's school or applying to the Secretary of DOE depending on which system under the grant program the school participates. Id. § 690.61(a)(1).

13. The BEOG program was amended by the Education Amendments of 1980, Pub.L. No. 96–374 § 402, 94 Stat. 1367 (1980) (codified at 20 U.S.C. § 1070a). The amendments did change the "cost of attendance" provision which will have a substantial impact on the grant program but did not alter the basic nature of the program. See 46 Fed.Reg. 6322 (1981). For a summary of the statutory change, see 45 Fed.Reg. 86394 (1980). Previous to July, 1981, the Department of Education regulations implementing the BEOG program were contained at 45 C.F.R. § 190.1–.96. The regulations have been amended to implement the 1980 statutory amendments and are now contained at 34 C.F.R. § 690.1–.96. Citations will be to the current law, however variances between the present program and the program prior to the amendments will be discussed where appropriate.

The discussion of the BEOG program that follows assumes a full funding situation and assumes a full time regular student is involved.

14. Prior to the 1980 amendments the basic grant was $1800 but an award was limited to no more than 50 percent of the cost of attendance at an institution. The amendments replaced these ceilings, increasing the maximum

grant amount in steps from $1900 in the 1981–82 award year to $2600 in the 1985–86 award year. In addition, the amendments modified the provision limiting the grant to 50 percent of the cost of attendance such that the allowable percentage increases in future years as the size of the maximum grant increases, starting with a 50 percent limit in the 1981–82 award year and increasing to 70 percent in the 1985–86 award year. See 20 U.S.C. § 1070a(a)(2). See also 45 Fed.Reg. 86394 (1980); 34 C.F.R. § 690.62 (1981).

15. A student is eligible for a grant under the BEOG program if he or she is enrolled at a qualified institution, as a regular student on at least a half-time basis, and is a citizen or meets certain residency requirements. 20 U.S.C. § 1091; 34 C.F.R. § 690.4 (1981). To be fully eligible for payment the student must also be making satisfactory progress in his or her course of study, not be in default on certain student loans or if in default meet certain other conditions, and not owe a refund on a government education grant. 34 C.F.R. § 690.75 (1981).

A college or university can participate with the DOE in the BEOG program through either the Regular Disbursement System, *id.* § 690.71–.81, or the Alternative Disbursement System, *id.* § 690.91–.96. Under the Regular Disbursement System the institution calculates and pays the BEOG award to the student. *Id.* § 690.-71–.72. The Secretary advances funds to the institution based on an estimate of the school's need for BEO grant funds. *Id.* § 690.74. The student applies directly to the institution for a determination of full eligibility and a calculation of the grant award by submitting the SER to the institution. *Id.* §§ 690.61(a)(1), .75. The institution must determine that the student is fully eligible for payment of an award [16] and then compute the amount of the grant award according to the formula contained in the DOE regulations. 20 U.S.C. § 1070(a)(2); 34 C.F.R. §§ 690.63, .75 (1981). Before the school can pay funds to the recipient of an award, the student must file a statement of educational purpose with the institution declaring that the funds will be used solely for educational expenses connected with attendance at the institution. 20 U.S.C. § 1091(a)(5), 34 C.F.R. § 690.79 (1981).[17] The school can pay the student directly by check or credit the student's account with the institution. 34 C.F.R. § 690.78 (1981).

A school that participates in the Alternative Disbursement System carries out essentially all the same functions except the student applies to the Secretary of DOE to have the grant award calculated and paid.

*Id.* §§ 690.91, .92, .94. The school still receives the SER from the student, makes the determination that the student is fully eligible, and receives the statement of educational purpose from the student. *Id.* § 690.94.

Additionally, each school participating in the BEOG program must carry out information dissemination activities directed at prospective and enrolled students regarding the financial assistance programs. 20 U.S.C. § 1092(a). Information must be available to the students concerning the financial assistance programs available and the costs of attending the institution which shall include tuition, fees, books, supplies, room and board or commuting costs, and any special program costs. *Id.*

In computing the amount of a student's BEOG award, two variables go into the formula set out in the DOE regulations; the expected family contribution and the cost of attendance at the institution. The cost of attendance includes tuition and fees, and allowances for room and board, books, supplies, transportation, miscellaneous personal expenses, and, where appropriate, child care. 20 U.S.C. § 1089(d); 34 C.F.R. § 690.51–.53 (1981).[18] *See also* 34 C.F.R. §§ 690.55–.58 (1981). The amount of award a student receives will be the lowest of (1) the difference between the amount of the basic grant [19] and the expected family contribution; (2) 50 percent of the applicant's cost of attendance at the institution;[20] or (3) the difference between the applicant's cost of attendance at the institu-

---

**16.** See *supra* note 15.

**17.** Prior to the 1980 amendments, 20 U.S.C. § 1088g required each student to file an *affidavit* stating that the award funds would be used solely for educational expenses at the institution. *See also* 45 C.F.R. § 190.79 (1979). The 1980 amendments relaxed this requirement such that now only a written statement of educational purpose, which need not be notarized, is required. 20 U.S.C. § 1091(a)(5); 34 C.F.R. § 690.79 (1981).

**18.** The 1980 amendments made significant changes to what was encompassed in the cost of attendance at an institution. Prior to 1980, 20 U.S.C. § 1070a(a)(2)(B)(iv) limited the cost

of attendance to three non-discretionary components: (1) actual tuition and fees charged, (2) actual institutional charges for room and board or a $1100 allowance for off-campus students, and (3) a $400 allowance for books, supplies, and miscellaneous expenses. *See* 45 C.F.R. § 190.–51 (1979). Under the amended act the "actual cost" restriction is eliminated and a series of expanded discretionary allowances is provided for. 20 U.S.C. § 1089(d); 34 C.F.R. § 690.51 (1981). *See also* 46 Fed.Reg. 6322 (1981).

**19.** *See supra* note 14.

**20.** *See supra* note 14.

tion and his or her expected family contribution. *See* 20 U.S.C. § 1070a(a)(2); 34 C.F.R. § 690.62 (1981).

### B. "Grantor"

The issue of who can be a grantor is the first matter to analyze in deciding whether Ms. Shaffer's BEO Grant was "specifically earmarked by the grantor for education expenses" and exempted from her income as a reimbursement. Unfortunately, the term "grantor" is not defined in the Food Stamp Act, the food stamp regulations, or the legislative history.

Ms. Shaffer argues that Owens Technical College, which participated in the Regular Disbursement System, was the grantor of her BEO grant since the DOE *delegated* to the school certain authority regarding the grant. Ms. Shaffer relies on the operation of the Regular Disbursement System to support the delegation argument. Owens Tech received grant funds from the DOE as a lump sum and was charged with the duty of determining the eligibility of students applying for grants, calculating the amount of each award, and paying awards to the students. 34 C.F.R. §§ 690.71, .72, .75, .78 (1981). Additionally, Ms. Shaffer points out, that in the event of an overpayment the school can be liable for the overpayment if it is not recovered from the student. *Id.* § 690.80. Ms. Shaffer is arguing that since the school has been delegated this authority, it is in fact the school that makes the grant award, and is the grantor.

The Secretary asserts that the focus should be on who was the owner or originator of the money. In this case the money belonged to the federal government and not to the college and thus, the Secretary argues, only the DOE was the grantor of the BEO grant. Additionally, the Secretary argues that the school was involved only in the ministerial function of distributing the money and the DOE had the true control over the money and the grants.

The district court concluded that Owens Technical College was the "grantor" of Ms. Shaffer's BEO grant along with the DOE, within the meaning of the Department of Agriculture regulations. It adopted the approach advanced by Ms. Shaffer believing it better reflected the operational realities of the BEOG program.[21]

Only two other cases have considered the meaning of the term "grantor". In *Spicer v. Commonwealth,* 58 Pa.Cmwlth. 558, 428 A.2d 1008 (1981), the Commonwealth Court of Pennsylvania concluded:

> Although the word "grantor" is not defined in the regulations, we hold this word to mean the organization or person that is the *source of the funds. The college in no way becomes a grantor merely by acting as an administrative conduit for the disbursement of the funds,* which do not come from the college's own resources.

428 A.2d at 1011 (emphasis added). However, in *Tufaro v. Department of Human Services,* 90 N.J. 538, 449 A.2d 1 (1982), the Supreme Court of New Jersey held that a school can be considered a grantor for earmarking purposes under an agency or delegation theory. *Id.,* at 6. The court recog-

---

**21.** The district court recognized that the Food and Nutrition Service of the Department of Agriculture had issued conflicting interpretations of the term "grantor." In March, 1980 the Chief of Program Operations of the Family Nutrition Programs, Western Region, responded to a request for a clarification of the definition of "grantor," stating:

> We interpret the term "grantor" to mean an individual, organization, or institution which provides scholarship or grant money to particular students. If the grantor provides the money through an intermediary, then the term "grantor" also applies to the intermediary.

However, in July, 1980, several months after this suit was filed, the national office of the Food and Nutrition Service sent a letter to the Western Regional Office, stating:

> We have carefully reviewed the case and confirmed with the Department of Education that schools cannot earmark grants or require students to sign receipts stating that BEOG monies must be used for educational expenses. Therefore, the college could not act as an agent of the grantor....
>
> ....
> ... FNS Considers the Department of Education to be the grantor of BEOG assistance and current Department of Education regulations clearly support our position.

nized that under the BEOG program the government delegates considerable authority to the school and appears to conclude that the school is a grantor of BEOG funds for the purpose of earmarking funds. *See id.*, at 5–7.

■ We conclude that a school can be a grantor for earmarking purposes when it possesses discretionary authority enabling it to place restrictions on the use of grant or scholarship funds. It is only when the school has been delegated such broad authority that the school can place restrictions on the use of funds that are more limiting than those imposed by the originator of the funds. Only then can the institution be considered an agent of the originator of the funds for the purpose of earmarking. An institution does not become a grantor simply by carrying out ministerial administrative tasks at the direction of the owner of the funds. Additionally, the view that only the owner or originator of the funds can be a grantor within the meaning of 7 C.F.R. § 273.9(c)(5)(iv) is much too narrow a construction and if strictly applied could lead to unintended results.[22] Consequently, we conclude that the proper approach is to examine the duties and powers of the institution, and if the institution has such discretionary power enabling it to restrict the use of the funds it is a grantor for the purposes of earmarking. Of course the originator or owner of the funds will also be a grantor for the purpose of earmarking.

■ Since the college carried out only ministerial functions that were directed by DOE regulations we conclude that Owens Technical College was *not* a grantor for the purpose of earmarking Ms. Shaffer's BEO grant. Admittedly, the school was delegated the responsibility of determining the eligibility of applicants, calculating the amount of each recipient's award, and paying the awards to the recipients, but each of these tasks was conducted in accordance with specific guidelines and directions imposed by the DOE. The college did not have any discretionary authority; it only carried out administrative functions directed by the DOE. The DOE regulations did not give Owens Technical College the authority to restrict the student's use of the BEOG funds. It was the federal government that specified how Ms. Shaffer could use her BEOG money; not Owens Tech. Therefore, Owens Tech was *not* the grantor of Ms. Shaffer's BEO grant for the purpose of earmarking.

## C. "Specifically Earmarked . . . For Education Expenses"

We must consider whether the DOE, as grantor of this BEO grant, either directly or indirectly through Owens Tech complying with DOE regulations, specifically earmarked the BEOG funds for educational purposes, thus qualifying for the reimbursement exclusion. Unfortunately, the term "specifically earmarked", like "grantor", is not defined in the Food Stamp Act, the food stamp regulations, or the legislative history.

The plaintiff argues that her BEO grant was specifically earmarked for education expenses as required by the regulations. Ms. Shaffer claims that the earmarking is evidenced by two facts. First, the plaintiff relies on the affidavit executed by her on April 6, 1979, stating that she would use the funds "solely for expenses related to attendance" at Owens Technical College.[23] Second Ms. Shaffer contends that the earmarking is evidenced by the breakdown of

---

**22.** For example, assume a private foundation makes a fund available to a school from which the school can award scholarships. The school has complete discretionary control over the scholarships. The foundation places no limits on the use of the scholarship money but the school structures the scholarships such that the money can only be used to purchase books and required supplies and equipment. In this situation the money is clearly earmarked for an education expense and is not generally available to the recipients. The money, however, would be considered income for food stamp purposes if only the owner or originator of the funds can be the grantor, because the owner (the private foundation) will not have done the earmarking. The food stamp regulations could not have intended such a result.

**23.** *See supra* note 17.

education costs prepared for Ms. Shaffer by Craig Rhodes, the Director of Financial Aid at Owens Technical College during the 1979–80 academic year.[24] This "budget" listed the total aid the plaintiff received during the 1979–80 academic year and provided:

> The money from these programs will help cover the cost of attending Owens. These costs for the academic year 1979–80 are:

| | Year | Semester |
|---|---|---|
| Tuition | $ 660. | $330. |
| Books | 190. | 95. |
| Transportation | 470. | 235. |
| Personal Expenses | 450. | 225. |
| Total | $1770. | $885. |

Mr. Rhodes testified before the state hearing examiner that the "personal expenses" category represented "lab fees, supplies and incidental fees such as uniforms, field trips and on campus meals." Ms. Shaffer argues that the affidavit and the budget, both of which are required by the DOE, specifically earmark the BEOG funds for education expenses, and thus the grant is excludable from income as a reimbursement.

The Secretary argues, however, that the BEO grant is only a routine grant and that there was no earmarking in this case. The Secretary maintains that the affidavit did not in any way limit the use of the funds and Ms. Shaffer could use the money for ordinary living expenses. Likewise, the budget did not restrict the use of the funds or change the general nature of the grant. Thus, the Secretary urges, the BEO grant was not specifically earmarked by the DOE for education expenses.

24. At oral argument, plaintiff's counsel admitted that the breakdown was provided in conformity with 20 U.S.C. § 1092(a), which requires the school to carry out information dissemination activities.

Additionally, at oral argument, when plaintiff's counsel was asked when the breakdown of education expenses was prepared, she responded:

> I don't believe the record indicates when the budget was actually made up, though, it was available at the time of the state hearing. . . .
> . . . .

The district court concluded that the affidavit and the college's breakdown of expenses did constitute a specific earmarking of the BEOG funds by the DOE for education expenses rather than for personal living expenses. As such the district court excluded the BEO grant from Ms. Shaffer's income pursuant to 7 C.F.R. § 273.9(c)(5).

In *Tufaro v. Department of Human Services,* 90 N.J. 538, 449 A.2d 1 (1982), the Supreme Court of New Jersey considered whether a certification that grant funds would be spent on itemized education expenses specifically earmarked the funds within the meaning of 34 C.F.R. § 273.-9(c)(5)(iv). *Id.* at 3, 4–6. The court concluded that the certification was not enough, even when the funds were used as indicated in the certificate. *Id.* at 6.

We conclude that in order to meet the specifically earmarked requirement of 7 C.F.R. § 273.9(c)(5)(iv), the grantor must somehow specifically designate grant funds for the education expenses defined in the food stamp regulations. In this case, we find that neither the affidavit nor the budget specifically designated Ms. Shaffer's BEOG funds for qualified education expenses. The BEO grant was a general grant, available to Ms. Shaffer to meet any expenses associated with her being in school, and the affidavit and budget did not restrict her use of the funds or alter the general nature of the grant. We reach this conclusion after examining and taking into account the affidavit, the college's breakdown of expenses, the structure of the

> . . . Let me say this, . . . this information is required to be compiled and supplied by the institution under federal law, so presumably this information is available at all times with respect to actual costs of attending that school. . . .

We are somewhat troubled that the copy of the breakdown included in the Joint Appendix is dated January 2, 1980, which is several months after Ms. Shaffer received the BEO grant, two months after Ms. Shaffer received notice from the LCWD that her food stamp benefits were being reduced, and only one month prior to the state hearing.

BEOG program, and most importantly the nature of the BEO grant.[25]

An examination of what the DOE considers education expenses for BEOG purposes and what the food stamp program considers education expenses under the reimbursement exclusion clearly indicates that BEOG funds are not earmarked as contemplated by 7 C.F.R. § 273.9(c)(5)(iv). The reimbursement exclusion of the food stamp regulations narrowly defines the education expenses that a grant can be specifically earmarked for and have the funds excluded from income for food stamp purposes. See 7 C.F.R. § 273.9(c)(5) (1982). A grant can only be excluded from income when its funds are specifically earmarked for non-mandatory education expenses that are other than normal living expenses. Id. An exclusion is not allowed when the grant funds are earmarked for expenses such as rent or mortgage, personal clothing, or food eaten at home, since these expenses are normal living expenses. Id. See also 43 Fed.Reg. 18889 (1978). For the exclusion to be allowed the funds must be earmarked for specific education expenses such as books, supplies, school related travel, and the like. 7 C.F.R. § 273.9(c)(5)(iv)´ (1982).

The BEOG program does not use the term "education expenses" but instead refers to the "cost of attendance" at an institution. The term "cost of attendance" can loosely be translated to mean education expenses. The DOE, however, defines "cost of attendance" much broader than the food stamp regulations define education expenses.[26] Under the DOE regulations the cost of attendance includes not only tuition, fees, books, and supplies, but also transportation, room and board, miscellaneous per-

sonal expenses, and child care.[27] 34 C.F.R. § 690.51-.53. See also 20 U.S.C. § 1089(d). This latter grouping of expenses, including transportation, room and board, miscellaneous personal expenses, and child care, however, is classified as normal living expenses under the food stamp program rather than education expenses.

Under the BEOG program the term "cost of attendance" appears in the formula employed to determine the amount of award a student receives and is used to define the limits on how a recipient can use the funds. 20 U.S.C. §§ 1070a(a)(2), 1091(a)5. See also 34 C.F.R. § 690.62 (1981). An eligible student may receive an award based on the difference between the cost of attendance at the institution and the student's expected family contribution. 20 U.S.C. § 1070a(a)(2)(B)(ii). Essentially, the student's expenses associated with his or her education are compared against the income the student expects to receive and the grant award is based on any deficiency in the income. The grant award is, however, subject to certain limits. If either the difference between the amount of the basic grant and the student's expected family contribution or fifty percent of the cost of attendance is less, the student receives the smaller amount. Id. § 1070a(2)(A)(ii), (2)(B)(i). See also 34 C.F.R. § 690.62 (1981). Likewise, once the student receives the BEO grant, the funds are available for any of the student's costs of attending the institution. 20 U.S.C. § 1091(a)(5). See also, 20 U.S.C. § 1070a(a)(1); 34 C.F.R. § 690.1 (1981).

This illustrates the general nature of the BEO grant. The cost of attendance at an institution, which includes a student's nor-

---

**25.** While not particularly applicable to this case, the Third Circuit considered BEOG funds to be "non-earmarked" funds when deciding whether a school, whose students receive BEO grants, is "extended federal financial assistance to any education program or activity" under Title IX of the Education Amendments of 1972, Pub.L. No. 92-318, §§ 901-07, 86 Stat. 373-75. See Grove City College v. Bell, 687 F.2d 684, 696-700, 705-706 (3d Cir.1982).

**26.** Accord, Tufaro v. Department of Human Services, 90 N.J. 538, 449 A.2d 1, 5, 6 (1982).

**27.** Prior to the 1980 amendments the cost of attendance included only tuition, fees, an allowance for room and board, and a $400 allowance for books, supplies and miscellaneous expenses. See supra note 18. Although this definition is not as expansive as the one currently employed, it does contain the element of room and board which must be considered a normal living expense.

mal living expenses is a consideration in determining the amount of award a student receives, and is the only limit on how the student can use the funds. The BEO grant was obviously designed to supplement a student's available resources and provide a general fund that can be drawn upon to meet any education related expenses, including normal living expenses. Since the BEOG funds are legitimately available for normal living expenses as well as other education related expenses there is no earmarking of the funds for education expenses as intended by 7 C.F.R. § 273.9(c)(5)(iv).

The affidavit signed by Ms. Shaffer does not change this result. The affidavit only affirmed that she would use the BEOG funds for her costs of attending Owens Technical College. In other words, the plaintiff obligated herself to use the money on education expenses as defined by the DOE. Since cost of attendance includes normal living expenses, Ms. Shaffer was still free, after signing the affidavit, to use the funds for her ordinary living expenses associated with attending school as well as for other education expenses. The affidavit merely affirmed what the BEOG program intended. It did not in any way further limit the use of the funds or earmark them as contemplated by the reimbursement exclusion.

Similarly, the budget or breakdown of expenses prepared by the college did not allocate any funds to any specific expenses. The school had to compute the expenses associated with attending Owens Tech in order to determine the amount of the BEOG award. By preparing a breakdown of those expenses for Ms. Shaffer, the school did not earmark specific amounts for certain expenses.[28] Even after the budget was prepared, Ms. Shaffer was free to use the funds on any of her costs of attendance as defined by the DOE.

**28.** Additionally, even if the school had intended to restrict the use of specific amounts for certain enumerated expenses, the school did not

## CONCLUSION

For the above stated reasons, we hold that the plaintiff's BEO grant was not specifically earmarked by the grantor for education expenses as required by 7 C.F.R. § 273.9(c)(5), and thus is *not* to be excluded from her income in computing food stamp eligibility and benefits as a reimbursement under 7 U.S.C. § 2014(d)(5). The district court is accordingly reversed. In light of our holding on this issue we find it unnecessary to decide the class decertification issue.

REVERSED.

KEITH, Circuit Judge, dissenting.

I respectfully dissent. I believe the majority's position is inconsistent with the remedial purpose of the food stamp program. The majority opinion reflects a surprising misunderstanding of basic agency principles and is unduly formalistic in its definition of "specially earmarked".

The critical question, as the majority has pointed out, is whether a "grantor" has "specifically earmarked" portions of Ms. Shaffer's Basic Education Opportunity Grant (BEOG) for educational purposes. 7 C.F.R. § 273.9(c)(5)(iv). The majority has concluded that the BEOG grant money is not excludable from income for food stamp purposes because neither the "grantor" nor the "specially earmarked" conditions has been met in the instant case. I disagree.

The majority reasons that "a school can be a grantor for earmarking purposes when it possesses discretionary authority enabling it to place restrictions on the use of grant or fellowship funds. It is only when the school has been delegated such broad authority that the school can place restrictions on the use of funds that are more limiting than those imposed by the originator of the funds. Only then can the institution be considered an *agent* of the originator of the funds for the purpose of earmarking. An institution does not become a grantor simply by carrying out ministerial administrative tasks at the direction of the owner of the funds." *Ante* at 817.

have the authority under the BEOG program to make such a restriction.

This reasoning is faulty. To suggest, as the majority has, that a school can only acquire agency status where it can "place restrictions on the use of funds that are more limiting than those imposed by the originator" is to ignore well-settled agency principles. "The right to control the agent is fundamental to the existence of an agency relationship". *NLRB v. Local No. 64, Falls Cities District Council of Carpenters,* 497 F.2d 1335, 1336 (6th Cir.1974). Indeed, the very purpose of an agent is to "carry out the ministerial administrative tasks at the direction" of the principal. *Id.; Thropp v. Bache Halsey Stuart Shields, Inc.,* 650 F.2d 817, 819–20 (6th Cir.1981); *Southern Pacific Transportation Co. v. Continental Shippers Ass'n Inc.,* 642 F.2d 236, 238 (8th Cir.1981); Restatement (Second) of Agency § 1.

Owens College, therefore, is an agent of the grantor, the Department of Education. The Department of Education has delegated to Owens College the authority to act within its regulations to make individual determinations of student qualification for grants. Moreover, it has required Owens College to perform these earmarking functions according to its regulations. This is the essence of an agency relationship. *Turano v. Department of Human Services,* 90 N.J. 538, 449 A.2d 1 (N.J.1982) was correctly decided. A college is a "grantor" within the meaning of 7 C.F.R. § 273.9(c)(5)(iv) where the government has delegated most of the administrative functions to the college, advanced a lump sum grant for distribution, and relied upon the college to determine the amount distributed to individual students. *Id.* at 5–6.

Finally, the evidence of earmarking contained in this record is sufficiently specific to satisfy the "specially earmarked" criteria of 7 C.F.R. § 273.9(c)(5)(iv). The special earmarking provided by an affidavit and a student budget itemizing the tuition, books, travel, and the various elements of personal expenses as defined by Owens College is sufficiently specific to satisfy the regulations.