Ronald A. HALLETT, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 84–16–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

Nov. 1, 1984.

**56**

Robert B. Halkowich, Newport News, Va., for plaintiffs.

John F. Kane, U.S. Atty., Norfolk, Va., Sarah Hunt, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Senior District Judge.

This cause was tried upon stipulated facts. The central issue is whether certain payments received by plaintiffs, Doris L. Hallett, Olivia D. Zorumski, Peggy H. Smith, Jane P. Reilly and Deborah G. Tanner [1] were a scholarship or fellowship and therefore excludable from gross income under § 117 of the Internal Revenue Code.[2]

---

1. Plaintiffs, Ronald A. Hallett, William E. Zorumski, Douglas M. Smith, Charles R. Toomajian and Allen C. Tanner, Jr., are joined as parties only by reason of having filed joint returns with their wives. Jane Reilly was formerly Jane Toomajian. Any reference to plaintiffs herein shall be in reference to Doris L. Hallett, Olivia D. Zorumski, Peggy H. Smith, Jane P. Reilly and Deborah S. Tanner.

2. 26 U.S.C. § 117 provides in pertinent part:
   § 117. Scholarships and fellowship grants
      (a) General rule.—In the case of an individual, gross income does not include
      (1) any amount received

   (A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or
   (B) as a fellowship grant, including the value of contributed services and accommodations; and
   (2) any amount received to cover expenses for
      (A) travel,
      (B) research,
      (C) clerical help, or
      (D) equipment,
   which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

For the years in question, plaintiffs were enrolled at the College of William and Mary seeking a Masters Degree in school psychology. The Master's program at William and Mary was a three year program requiring the completion of sixty credit hours. The first two years of the program candidates were required to take various courses at William and Mary for which they received credit. In the third year, all candidates for the degree were required to participate as an intern school psychologist in a Virginia public school. Twelve of the sixty credits were awarded for this internship.

The internship ran for one academic school year and the candidates received a monetary amount from the school system to which they were assigned. The amounts received by the plaintiffs were deemed taxable income by the Internal Revenue Service and federal income taxes were paid by the plaintiffs. They have instituted this suit to obtain a refund for the taxes collected.

Doris Hallett, while a full-time graduate student in the intern program during the 1978–79 academic year received a total of $8,900.00 from the Poquoson School System. She entered into an employment contract with the Poquoson City School Board for the 1978–79 school year which states that she accepts the position of teacher. The School Board agreed to pay Ms. Hallett $8,900.00, an amount equal to that paid first-year teachers. In addition, Ms. Hallett earned sick leave, participated in a retirement plan, and federal income tax and social security were withheld from this amount by the School System. She, along with plaintiff, Ronald A. Hallett, paid $722.00 in income tax on April 15, 1979 based upon the portion of the amount received in 1978, and paid $1,979.00 in income taxes on April 15, 1980 based upon the portion of the amount received in 1979.

Olivia D. Zorumski, while a full-time graduate student in the intern program during the 1977–78 academic school year received a total of $8,650.00 from the Newport News School System, and federal income tax and social security tax were withheld from this amount beginning in January 1978 by the School System. She, along with plaintiff, William E. Zorumski, paid $1,272.41 in income taxes on April 15, 1978 based upon the portion of the amount received in 1977, and paid $2,666.23 in income taxes on April 15, 1979 based upon the portion of the amount received in 1978.

Peggy H. Smith, while a full-time graduate student in the intern program during the 1978–79 academic year received a total of $9,450.00 from the Newport News School System, and federal income tax and social security tax were withheld from this amount by the School System. She, along with plaintiff, Douglas M. Smith, paid $2,314.00 in income taxes on April 15, 1980 based upon the portion of the amount received in 1979.

Jane P. Reilly, while a full-time graduate student in the intern program during the 1978–79 academic year received a total of $9,277.00 from the Surry County School System. She entered into an employment contract with the Surry County School Board for the 1978–79 school year which states that she accepts the position of "School Psychologist Intern." The School Board agreed to pay Ms. Reilly $9,277.00, an amount equal to that paid first-year teachers. In addition, federal income tax and social security tax were withheld from this amount by the School System. She, along with plaintiff, Charles R. Toomajian, paid $686.00 in income taxes on April 15, 1979 based upon the portion of the amount received in 1978, and paid $1,878.00 in income taxes on April 15, 1980 based upon the portion of the amount received in 1979.

Deborah G. Tanner, while a full-time graduate student in the intern program during the 1977–78 academic year received a total of $8,825.00 from the Norfolk School System. She entered into an employment contract with the Norfolk City School Board for the 1977–78 school year which states that she accepts the position of "School Psychologist." The School Board agreed to pay Mrs. Tanner $8,825.00, an amount equal to that paid

first-year teachers. In addition, Mrs. Tanner earned sick leave, annual leave, participated in a retirement plan. Federal income tax and social security tax were withheld from the amount by the School System. She, along with plaintiff, Allen C. Tanner, Jr., paid $1,002.00 in income tax on April 15, 1979 based upon the portion of the amount received in 1978.

All of the plaintiffs timely filed claims for refund of the aforesaid amounts of income tax with the Internal Revenue Service, and timely and properly filed claims before this Court after their respective claims for refund were finally denied.

The internship program was initiated by Dr. Ruth K. Mulliken who is a Professor of Education at the College of William and Mary. In 1975, the first year the Master's Degree in school psychology was offered, Dr. Mulliken contacted several public school systems in the vicinity of William and Mary. As a result of this action, several school systems agreed to participate in the internship program which was to begin in the 1977–78 academic year. Dr. Mulliken stated in her *de bene esse* deposition, which was a part of the stipulated record, that the purpose of the program was to provide a hands–on experience to the students.

William and Mary retained extensive control over the program. The students were interviewed by the school system after which William and Mary assigned the students to a particular school system. The students were required to attend meetings at William and Mary once every other week. Although there was no restriction placed on the amount of time the College could use in supervising or critiquing the students, it was expected that the students would be at their assigned schools during the school day. The students worked during the school system's academic year, not William and Mary's.

The plaintiffs were compensated by the school systems at the rate they paid first year teachers. This was substantially less than the amount paid to school psychologists, but the plaintiffs were not, at that time, fully qualified to be school psychologists. Dr. Mulliken stated that she had suggested the rate of compensation because she felt that was all the school systems could afford. She stated that it bore no relationship to the worth of the services provided by the students or their financial need.

The plaintiffs were in no way promised nor expected future employment with the school systems they worked for, but four of the five did obtain employment with the same school system they interned with.[3]

Both the Newport News[4] and Norfolk[5] school systems had other full time school psychologists. But Surry County[6] and Poquoson[7] school systems had no other school psychologists. Dr. Mulliken stated that she felt a mandate to place the internships where they were needed.

There has been presented substantial evidence that the purpose of the program went to train the plaintiffs to become school psychologists. The great emphasis upon this evidence was misplaced since it is relevant only "insofar as it might possibly shade the purpose for which payments are made to taxpayers." *Parr v. U.S.*, 469 F.2d 1156, 1157 (5th Cir.1972). The Fourth Circuit has held that it is the primary purpose of the payments made to the taxpayer which is controlling. *Hembree v. U.S.*, 464 F.2d 1262, 1264 (4th Cir.1972).

In order to establish the primary purpose of the payment, the grantor must first be identified. The money received by the plaintiffs was paid directly to them by the school systems. Plaintiffs contend that the reason for this was administrative convenience and that the true grantor was

---

3. Jane P. Reilly is the only one not now working for the school system with which she interned.

4. Olivia Zorumski and Peggy Smith interned at Newport News.

5. Deborah Tanner interned at Norfolk.

6. Jane Reilly interned at Surry County.

7. Doris Hallett interned at Poquoson.

William and Mary. The Sixth Circuit in *Shaffer v. Block,* 705 F.2d 805 (6th Cir. 1983), was faced with the same question of how to determine who was the grantor. The Sixth Circuit had to determine if the funds were specifically earmarked by the grantor for education expense and therefore excluded from income in determining whether Shaffer was eligible for food stamps. The term grantor was not defined in the relevant statute in *Shaffer,* just as it is not defined by the Internal Revenue Code.

The court in *Shaffer* held that "the proper approach is to examine the duties and powers of the institution, and if the institution has such discretionary power enabling it to restrict the use of the funds it is a grantor . . ." *Id.* at 817. The crucial question is whether William and Mary was given discretionary power over the funds paid to the plaintiffs. There is no evidence that William and Mary was given such broad authority over the funds. In fact, by statute in Virginia, the School Board is charged with the duty to manage and control the funds made available to the School Board for public schools. Va.Code § 22.1–89 (1950). Therefore, William and Mary is not the grantor. It is the school systems which are the grantors and their purpose in making the payments is controlling.

It would have made the task of this court much simpler if either counsel had submitted evidence as to the agreement between the school systems and the College of William and Mary. There was, however, sufficient evidence presented to determine that the purpose of the payments was to compensate the plaintiffs for the services they provided to the school system.

The plaintiffs as intern school psychologists performed many duties. These duties were agreed to by the participating school systems and William and Mary. They were outlined in an exhibit entitled "General Principles Regarding the School Psychology Internship." According to that exhibit the plaintiffs were to perform the following activities:

(1) Administration and interpretation of individual tests of personality, intelligence, achievement and other special tests.

(2) Report writing and recommendations.

(3) Teacher and parent conferences.

(4) Observation of students in classrooms.

(5) In-service training of teachers.

(6) Participation in administrative and staff meetings.

(7) Assist in special programs such as those for the blind, gifted, retarded, emotionally disturbed, etc.

(8) Gain experience in group testing programs utilized by the system.

(9) Participate in activities such as PTA, etc.

(10) Facilitate and encourage interaction of the intern with other professionals in the school: nurses, social workers, counselors, etc.

These duties performed for the school system were valuable to the school system. Dr. Mulliken recognized their value since she felt a mandate to place the internships in school systems where they did not have any school psychologists and they were needed. The fact that they were paid the salary of a first year teacher and not that of a school psychologist reflected their lack of experience and that it was necessary to have added supervision.

Dr. Mulliken stated that William and Mary determined how much time an intern spent in each activity, but that the particular children to be tested, counseled, etc., was determined by the school systems. The children selected to be tested, counseled, etc., are chosen because they need it. The school system obviously derives some benefit from having these duties performed.

Plaintiff's dual responsibility [8] to the school systems and to William and Mary

---

**8.** Dr. Mulliken stated that reports prepared by the plaintiffs were first reviewed and revised by members of the faculty at William and Mary before being passed on to the school systems.

does not alter the fact that the school systems' purpose in paying the plaintiffs was to compensate them for services rendered. *Dora Aileen Chase* TCM P–H ¶ 81,162.

The Supreme Court in *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), stated that scholarships and fellowships were "relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Id.* at 751. In this case there was a substantial *quid pro quo*. The plaintiffs performed valuable services for the school systems for which they were compensated. Therefore the payments received by the plaintiffs did not constitute a scholarship or fellowship and are not excludable under § 117 of the Internal Revenue Code.

A judgment order in favor of the defendant has this day been entered.

This, however, shows only that the students had dual responsibilities to both the school systems and William and Mary.